FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 16, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RHONDA C.,[1]

           Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

           Defendant.

No.   1:22-cv-3022-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION,
DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION,
AND REMANDING FOR
ADDITIONAL PROCEEDINGS**

Plaintiff Rhonda C. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because the ALJ did not provide adequate reasons supported by substantial evidence for discounting Plaintiff's symptom testimony and certain medical opinions, the ALJ reversibly erred.  The Court reverses the decision of the ALJ and remands the matter for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

1

## I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

## II.    Background

In July 2018, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability based on post-traumatic stress disorder (PTSD), depression, and bipolar disorder.[8]  Plaintiff alleged an onset date of February 1, 2016.[9]  After the agency denied her applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ.

In January 2021, ALJ Gregory Moldafsky held a hearing at which Plaintiff and a vocational expert testified.[10]  In April 2021, the ALJ issued a written decision denying Plaintiff's disability application.[11]

### A.    Five-Step Findings

As to the sequential disability evaluation, the ALJ found as follows.

- Step one: Plaintiff had not engaged in substantial gainful activity since February 1, 2016, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: PTSD, anxiety disorder, depressive disorder, and personality disorder.

---

[8] AR 289, 340.

[9] AR 296.

[10] AR 43–73.

[11] AR 13–24.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels, subject to the following nonexertional limitations:

  > simple (as defined in the D.O.T. as SVP ratings 1 and 2), routine, and repetitive tasks in a work environment that is not fast paced or has strict production quotas (e.g., work that is goal based or measured by end result). Additionally, she is limited to no more than incidental interaction with the general public, no more than occasional interaction with co-workers and supervisors.[12]

- Step four: Plaintiff could perform past relevant work as a folding machine operator.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as photo-copy machine operator, office helper, and marker.

**B.    Persuasiveness/Credibility Findings**

In his analysis, the ALJ found the following medical opinions persuasive:

- the August 2019 and February 2020 opinions of the reviewing state-agency psychological consultants,

---

[12] AR 17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- the August 2018 opinion of examining psychologist Steven Olmer, PhD, and

- the November 2014 opinion of examining psychologist Thomas Genthe, PhD.

The ALJ found the following medical opinions unpersuasive:

- the June 2019 opinion of examining psychologist Tamsyn Bowes, PsyD,

- the opinions dated August 2018 through December 2020 of treating counselor Amy Zook, MS, and

- the June 2012 opinion of consultative examiner Jay Toews, EdD.

The ALJ also found Plaintiff's subjective complaints and alleged limitations not persuasive.[13] The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[14] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[13] AR 22.

[14] 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

evidence or is based on legal error."[15]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]  Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[17]  The Court considers the entire record, and the Court may not reverse an ALJ decision due an error that "is inconsequential to the ultimate nondisability determination."[18]

## IV.    Analysis

Plaintiff argues the ALJ erred by improperly evaluating the medical opinions of Dr. Bowes and Ms. Zook, as well as by improperly rejecting Plaintiff's symptom reports.[19]

## A.    Medical Opinions: Plaintiff shows consequential error.

While an ALJ need not "give any specific evidentiary weight . . . to any medical opinion(s)," the ALJ must consider and evaluate the persuasiveness of all

---

[15] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[16] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[17] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[18] *Molina*, 674 F.3d at 1115. *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

[19] *See generally* ECF No. 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

medical opinions.[20]  The factors for evaluating the persuasiveness of medical

opinions include, but are not limited to, supportability, consistency, relationship

with the claimant, and specialization.[21]  Supportability and consistency are the

most important factors, and the ALJ is required to explain how both of these

factors were considered as to each medical source.[22]

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[23]

Typically, the ALJ may, but is not required to, also explain how the other factors

were considered.[24]

### 1.    **Tasmyn Bowes, PsyD**

In June 2019, Tasmyn Bowes, PsyD, performed a psychological evaluation of

Plaintiff, which included the administration of a Trails A and B test, a Rey-15 test,

---

[20] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

[21] *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

[22] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[23] *Id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

[24] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

a Beck Depression Inventory, and a Becks Anxiety Inventory.[25]  Dr. Bowes diagnosed Plaintiff with PTSD, bipolar disorder, and persistent depressive disorder, "chronic major depression, severe."[26]  Dr. Bowes opined that Plaintiff had a severe limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision.  Dr. Bowes also opined Plaintiff had a marked limitation in her ability to (a) understand, remember, and persist in tasks by following detailed instructions, (b) communicate and perform effectively in a work setting, (c) maintain appropriate behavior in a work setting, and (d) complete a normal workday and workweek without interruptions from psychologically based symptoms.[27]

In June 2019, the state agency hired a consulting psychologist to review Dr. Bowes' report.[28]  The reviewing psychologist agreed that medical evidence supported Dr. Bowes' diagnoses as well as the severity and functional limitations she assessed.[29]

//

---

[25] AR 889–900.

[26] AR 892.

[27] AR 892.

[28] AR 905–06.

[29] AR 905–06.

1

### a. *ALJ's Finding & Analysis*

2    The entirety of the ALJ's analysis regarding Dr. Bowes' medical opinion was

3    as follows:

4        I find the opinion of Tamsyn Bowes, Psy.D., unpersuasive insofar as
         the claimant has as much as marked limitations due to her mental
5        health symptoms, as this is out of proportion to the type and degree of
         treatment needed and mental status examination findings showing no
6        significant deficits in fund of knowledge, abstract thought,
         concentration, and memory skills.[30]

7

### b. *Supportability Factor*

8

9    Despite being required to expressly consider supportability as a factor, the

10   ALJ failed to do so here.[31]  This constitutes reversible legal error.[32]  In determining

11   whether to affirm an ALJ's decision, the Court is constrained to the reasons and

12

13   _____

14   [30] AR 21 (cleaned up).

15   [31] An ALJ must consider and articulate how persuasive she found each medical

16   opinion, including whether the medical opinion was consistent with and supported

17   by the record. 20 C.F.R. §§ 404,1520c(a), (b), (c), 416.920c(a), (b), (c); *Woods v.*

18   *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

19   [32] *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) ("[W]e will explain how we

20   considered the supportability and consistency factors . . . ."); *see also Trevizo v.*

21   *Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding that the ALJ's failure to

22   consider the applicable factors under the prior regulations, including the

23   supportability of the opinion, constituted reversible legal error).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

supporting explanation offered by the ALJ.[33]  And the ALJ did not articulate his

persuasiveness findings or cite to supporting evidence in a way that would permit

the Court to determine whether such findings are supported by substantial

evidence.[34]  Moreover, as discussed below, even if this error were deemed harmless,

additional errors require reversal.

### c.  *Consistency Factor*

The ALJ failed to explain how normal showings in "fund of knowledge,

abstract thought, concentration, and memory skills" could undermine Dr. Bowes'

opinions regarding Plaintiff's abilities in other areas of functioning, such as

maintaining regular attendance, communicating and performing effectively in a

work setting, maintaining appropriate workplace behavior, and completing a

normal work schedule without interruptions from mental-health symptoms.[35]

---

[33] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court
review is constrained to the reasons the ALJ gave).

[34] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849
F.2d 418, 421–22 (9th Cir. 1988); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir.
2003) ("We require the ALJ to build an accurate and logical bridge from the
evidence to her conclusions so that we may afford the claimant meaningful review
of the SSA's ultimate findings.").

[35] *See Embrey*, 849 F.2d at 421–22 (requiring the ALJ to identify the evidence
supporting the found conflict to permit the Court to meaningfully review the ALJ's

1   Likewise, the ALJ neither explained why Plaintiff's ongoing mental-health

2   counseling and prescribed medications were inconsistent with Dr. Bowes' opinion,

3   nor indicated what "type and degree" of treatment would be necessary to be

4   considered "proportionate" to the limitations assessed.[36]

5   ### d.    *Type & Degree of Treatment*

6          Throughout his persuasiveness analysis (not just when assessing Dr. Bowes'

7   medical opinion), the ALJ relied on "the type and degree of treatment needed,

8   including ongoing therapy and the claimant's prescribed medication."[37]  A

9   claimant's course of treatment, including an inadequately explained failure to seek

10  treatment, is a relevant factor for the ALJ to consider when assessing the

11  claimant's symptom reports.[38]  But the ALJ did not articulate any evidence

12  suggesting someone with the asserted impairments would receive a different type

13

14  _____

15  finding); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding

16  the ALJ erred by rejecting the claimant's symptoms resulting from anxiety,

17  depressive disorder, and PTSD on the basis that claimant performed cognitively

18  well during examination and had a generally pleasant demeanor).

19  [36] *Embrey*, 849 F.2d at 421–22 ("The ALJ must do more than offer his conclusions.

20  He must set forth his own interpretations and explain why they, rather than the

21  doctors', are correct.").

22  [37] AR 21.

23  [38] 20 C.F.R. §§ 404.1529(c)(3)–(4) 416.929(c)(3)–(4).

or degree of treatment, nor does the Court's own review of the record reveal any such evidence, which would likely need to be introduced through a medical expert qualified to assess the medications and other treatment methods at issue.[39]

Additionally, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[40] When an ALJ relies on a lack of treatment to discount medical evidence and/or the claimant's symptom reports, the ALJ cannot ignore probative evidence in the record indicating an alternative explanation for why the claimant did not pursue additional treatment.[41] Here, the record contained evidence suggesting that Plaintiff's "anxiety and mistrust makes it difficult to find appropriate treatment, as she has significant anxiety about taking medications and a variety of anxieties in

---

[39] *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert" and should not go outside the record for purposes of "making his own exploration and assessment as to the claimant's [mental] condition").

[40] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999).

[41] *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); SSR 18-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

trusting health providers."[42]  Absent additional evidence, or at least a more

detailed and meaningful explanation for why the current evidence of record shows

Plaintiff's mental-health treatment was inconsistent with the evidence being

rejected, "the type and degree of treatment needed" was not a valid basis for

assessing the persuasiveness of medical opinions.

### 2.  Amy Zook, MS

From August 2018 through December 2020, Plaintiff's treating counselor,

Amy Zook, MS, supplied several forms and letters regarding Plaintiff's mental

impairments, the associated symptoms, and their impact on Plaintiff's functional

abilities.[43]  Ms. Zook indicated Plaintiff's symptoms could vary but that Plaintiff's

mental impairments—primarily bouts of increased depression—would present

several significant limitations for purposes of fulltime employment.  For instance,

as Plaintiff points out on appeal, Ms. Zook opined that Plaintiff had marked to

severe limitations in her ability to

> (a) perform activities within a schedule, maintain regular attendance
>     and be punctual within customary tolerances,
> (b) interact appropriately with the general public,

---

[42] See AR 1302 (Sept. 2019); see also, e.g., AR 1306 (June 2019: noting "anxiety

about prescriptions").

[43] See AR 1314–16 (Aug. 2018 Mental-RFC Assessment); AR 1304–11 (June 2019

Function Report – Adult – Third Party); AR 1301–03 (Sept. 2019 letter); AR 1273–

76 (Aug. 2020 Mental Source Statement); AR 1262–65 (Dec. 2020 Mental Source

Statement).

1
2
3
4
5

(c) understand and remember detailed instructions,
(d) work in coordination with or proximity to others without being distracted by them,
(e) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and
(f) get along with co-workers or peers without distracting them or exhibiting behavioral extremes.[44]

6

Ms. Zook also opined that Plaintiff would likely be off task 21–30% of the time

7

during a normal workweek and was likely to miss an average of four or more days

8

of work per month.[45]  Ms. Zook repeatedly explained that despite periods of

9

improvement and higher levels of functioning, Plaintiff was still unable to

10

consistently perform and was likely to miss "substantial amounts of time at work"

11

due to episodes of increased depression and/or anxiety.[46]

12

        In finding Ms. Zook's opinions unpersuasive, the ALJ found the opined

13

limitations were "out of proportion to the type and degree of treatment needed and

14

mental status examination findings showing no significant deficits in fund of

15

knowledge, abstract thought, concentration, and memory skills."[47]  The ALJ

16
17
18

───────────────

19

[44] ECF No. 12 at 16–17 (formatting altered) (citing AR 1262–63, 1273–74).

20

[45] AR 1264, 1275.

21

[46] *See, e.g.,* AR 1265.

22

[47] *See* AR 21 (explaining Ms. Zook's opinions were discounted for the same reasons

23

as Dr. Bowes' opinion).

1  noted—without going into detail—that Plaintiff's treatment included ongoing

2  therapy and prescribed medication.

3      The ALJ's reasons for discounting Ms. Zook's opinions suffer from the same

4  flaws as those discussed above regarding Dr. Bowes' opinion.[48]  Despite being

5  required to do so, the ALJ failed to expressly consider the supportability factor

6  while assessing Ms. Zook's opinions.[49]  The ALJ also failed to explain why either

7  Plaintiff's level of care or the cited mental-status findings (showing normal results

8  for "fund of knowledge, abstract thought, concentration, and memory skills") are

9  inconsistent with the limitations assessed by Ms. Zook, particularly those

10 limitations that Ms. Zook clearly tied to Plaintiff experiencing episodes of increased

11 depression and/or other mood problems.

12

13

14

15

16 [48] As the ALJ's decision and the parties' arguments all appear to treat Ms. Zook as

17 a medical source, the Court presumes that Ms. Zook, who is both Plaintiff's

18 counselor and the program director for a wellness house, is a licensed healthcare

19 worker who qualifies as a medical source. *See* 20 C.F.R. §§ 416.902(i), 404.1502(i)

20 (each defining "medical source").  Regardless, the Court's decision would be the

21 same even if Ms. Zook were to qualify only as a "nonmedical source." *See id.*

22 §§ 416.902(j), 404.1502(j).

23 [49] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

### 3.    <u>**Rebekah Cline, PsyD**</u>

Although neither party addressed the issue, the Court notes that the ALJ failed to make the requisite persuasiveness findings for the psychological evaluation that was conducted by Rebekah Cline, PsyD, on January 21, 2015.[50] This medical opinion predates the alleged onset date of February 1, 2016, but the ALJ found persuasive Dr. Genthe's opinion, which was rendered several months earlier.  As such, on remand, the ALJ should expressly address Dr. Cline's medical opinion.

### 4.    <u>**Consequential Error**</u>

The ALJ erred by failing to meaningfully explain his consideration of the medical-opinion evidence and why he discounted the medical opinions at issue. This leaves the Court unable to assess whether the ALJ's decision is supported by substantial evidence.  Further, the vocational-expert testimony establishes that Plaintiff would have been found disabled if the assessed RFC included the additional limitations opined by Dr. Bowes and/or Ms. Zook.[51]  The ALJ's errors are

---

[50] *See* AR 941–45.  The ALJ did, however, cite this psychological evaluation while reciting Plaintiff's treatment history. *See* AR 19 (citing AR 943).

[51] *See, e.g.*, AR 69 (vocational expert testifying that employers typically "accept no more than one absence per month").

therefore consequential and warrant reversal with further proceedings on remand.[52]

On remand, the ALJ must meaningfully articulate and explain his consideration of the supportability and consistency factors as to each medical source, including Dr. Cline.[53]  If the ALJ again finds a medical opinion less persuasive (or otherwise discounts it) based on a perceived inconsistency, the ALJ must identify the inconsistency and explain why it tends to undermine the medical opinion at issue.[54]  The ALJ should take special care to explain his reasoning when relying upon normal findings in mental-status examinations to discount asserted mental-health limitations.[55]

---

[52] *See Molina*, 674 F.3d at 1115. *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

[53] *See* 20 C.F.R. §§ 404,1520c, 416.920c; *Woods*, 32 F.4th at 792.

[54] *See Ghanim*, 763 F.3d at 1164; *Embrey*, 849 F.2d at 421–22 (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding).

[55] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental-health findings against findings from other mental-health professionals); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *Orn v. Astrue*, 495

1    If the ALJ again discounts a medical opinion based on the type and degree of

2    Plaintiff's treatment, the ALJ must explain how substantial evidence in the record

3    indicates a different type and/or greater level of treatment would be expected if the

4    medical opinion were fully credited.  In such event, the ALJ must also expressly

5    address whether, and to what extent, Plaintiff's mental impairments are

6    themselves responsible for a lack of increased treatment.  To this end, if the ALJ

7    finds it would be helpful, the Court recommends the ALJ call a mental-health

8    medical expert who is qualified to assess what courses of treatment, including the

9    type and dosage of medications prescribed, could be reasonably expected when

10    presented with similar circumstances.

11    **B.    Symptom Reports: Plaintiff shows error.**

12    The ALJ's weighing of the medical evidence necessarily impacted his

13    sequential analysis, and the Court need not analyze Plaintiff's remaining claims.

14    Even so, to provide additional guidance on remand, the Court briefly addresses the

15    Commissioner's assertion that, because of evidence of malingering, the ALJ was

16    not required to provide specific, clear, and convincing reasons for rejecting

17    Plaintiff's symptom reports.[56]  The Court disagrees.

18

19    _____

20    F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in their

21    proper context).

22    [56] *See* ECF No. 13 at 5. *See also Ghanim*, 763 F.3d at 1163 (holding the clear-and-

23    convincing standard applies absent affirmative evidence of malingering).

1   The Commissioner is correct that under Ninth Circuit precedent, if the

2   record contains "affirmative evidence" of malingering, the clear-and-convincing

3   standard of review will not apply to the ALJ's assessment of a claimant's symptom

4   reports.[57]  The Commissioner also accurately points out that, here, the ALJ noted

5   Plaintiff "was assessed with probable symptom exaggeration, ADD/ADHD by

6   history, anxiety disorder . . ."[58]  Yet, this assessment was written in 2012 by

7   Dr. Toews, whom the ALJ found unpersuasive.  Even more, Dr. Toews' assessment

8   of "probable symptom exaggeration" does not appear to be based on any objective

9   evidence in the record.  In support, Dr. Toews merely explained, "She was a bit

10  impatient.  She does appear to be an opportunist. Disability seeking is

11  suspected."[59]  But Dr. Toews was not able to review any of Plaintiff's records, and it

12  does not appear that Dr. Toews administered any kind of test designed to measure

13  objective signs of malingering, exaggeration, or the like.

14      Moreover, Dr. Toews' suspicion regarding symptom exaggeration is

15  seemingly contradicted by other medical findings.  In November 2104, Dr. Genthe

16  wrote that Plaintiff "appeared relatively genuine in her responses," explaining that

17  the results of the administered Personality Assessment Inventory "did not indicate

18

19  _____

20  [57] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n.1 (9th Cir.

21  2008).

22  [58] AR 18; *see also* AR 448.

23  [59] AR 447.

an attempt to portray herself in a more negative light than warranted."[60]  In

January 2015, Dr. Cline noted that Plaintiff's results on an administered Rey-15

test "minimizes the likelihood that she is malingering at this time."[61]  Similarly, in

June 2019, Dr. Bowes found a subsequent Rey-15 test "suggests no evidence of

malingering," and Plaintiff "seemed open and honest in presentation."[62]

Given the context of the entire record—and the ALJ's rejection of Dr. Toews'

opinion—the Court finds Dr. Toews' conjecture regarding Plaintiff's "probable

symptom exaggeration" amounts to neither "affirmative evidence" of malingering

nor substantial evidence that could rationally support a malingering finding.[63]

---

[60] AR 931. AR 933.

[61] AR 942.

[62] AR 891, 893.

[63] *Cf. Austin v. Saul*, 818 F. App'x 725, 728 (9th Cir. 2020) (unpublished) ("We thus

do not consider [an] unexplained notation to constitute affirmative evidence of

malingering. Nor do we equate a claimant's possible exaggerations regarding the

severity of his symptoms with affirmative evidence of malingering."); *cf. also id.* at

729 (Vandyke, C.J. concurring in part and dissenting in part) ("I diverge from the

majority in this case because I believe the review of the ALJ's consideration of [the

claimant]'s testimony should be for 'substantial evidence' because of the affirmative

evidence of malingering in the record."); *Makoviney v. Saul*, 830 F. App'x 192, 195

(9th Cir. 2020) (unpublished) (applying the substantial-evidence standard to an

On remand, if the ALJ discount's Plaintiff's symptom testimony because of symptom exaggeration and/or any other form of malingering, the ALJ shall clearly state as much and explain how the record supports such a finding.  If the ALJ does not make an express finding of malingering and again discounts Plaintiff's symptoms on remand, the ALJ must articulate clear and convincing reasons for doing so.[64]  General findings are insufficient; the ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[65]  Additionally, when assessing Plaintiff's mental health symptoms, the ALJ is encouraged to expressly address the issue of waxing and waning symptoms.

## V.    Conclusion

Plaintiff establishes the ALJ reversibly erred.  However, questions of fact remain; the record does not clearly establish that Plaintiff is disabled.  As such, the

---

ALJ's finding of malingering); *Schow v. Astrue*, 272 F. App'x 647, 651–52 (9th Cir. 2008) (unpublished) (concluding that examination findings which were "mixed at best" did not constitute affirmative evidence of malingering).

[64] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[65] *Id.* (quoting *Lester*, 81 F.3d at 834, and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

Court remands this matter for further proceedings.[66]  On remand, the ALJ is to conduct the sequential evaluation anew, beginning at step two, consistent with this order.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

4.    The decision of the ALJ is **REVERSED** and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

5.    The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 16th day of February 2023.

_____
EDWARD F. SHEA
Senior United States District Judge

---

[66] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).